UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASEY L. HACKER, an individual, | No. 1:15-cv-01258-DAD-MSJ |
| Plaintiff, | ORDER ADOPTING FINDINGS AND RECOMMENDATIONS |
| v. | (Doc. No. 24) |
| MICHAEL L. HACKER, an individual, JAMES O. HACKER, an individual, HACKER CATTLE CORPORATION, and DOES 1 through 10, inclusive, | ORDER GRANTING DEFENDANT MICHAEL HACKER'S MOTION TO DISMISS |
| Defendants. | (Doc. No. 30) |

## I.  Introduction

On April 7, 2016, Casey Hacker ("plaintiff") filed *pro per*[1] a second amended complaint against his brother, Michael Hacker ("Michael"), his father, James Hacker ("James"), and a

---

[1] Defendant Michael Hacker challenges plaintiff's *pro per* status. He contends that plaintiff, while not a member of the bar, is an experienced litigant, having represented himself in multiple state court actions over the years. Generally, "'[a] document filed *pro se* is to be liberally construed,' . . . and a 'pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,' . . . ." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, pro se pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim has been stated." *Narog v. Certegy Check Servs., Inc.*, 759 F. Supp. 2d 1189, 1192 (N.D. Cal. 2011) (citing *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)). While there is some authority suggesting that district courts may use a sliding scale approach in analyzing the pleadings of more experienced *pro se* litigants, no Ninth Circuit authority allows for such. *Compare Holsey v. Bass*, 519 F. Supp. 395, 407 n.27 (D. Md. 1981), *with Chey v. Orbitz Worldwide, Inc.*, 983 F. Supp. 2d 1219, 1227 n.1 (D. Haw. 2013). Moreover, this appears to be plaintiff's first foray into federal court, a forum with rules and procedures with which he is likely unfamiliar. Accordingly, plaintiff's *pro se* status will be recognized by the court.

1

cattle-feed business owned and operated by Michael and James, Hacker Cattle Corporation ("HCC").[2]  (Doc. No. 27.)  Plaintiff alleges defendants engaged in repeated fraudulent and extortionate conduct in order to deprive him of his share of a family trust, and in doing so violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968.

On May 2, 2016, defendant Michael filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. No. 28.)  Defendant Michael subsequently filed an amended motion to dismiss on May 3, 2016.  (Doc. No. 30.)  On May 31, 2016 plaintiff filed his opposition to the amended motion to dismiss.  (Doc. No. 32.)  On June 13, 2016, defendant filed a reply.  (Doc. No. 34.)  On June 21, 2016, the motion came on for hearing before the court.  Plaintiff appeared telephonically on his own behalf and attorney James Betts appeared on behalf of the moving defendant.  Having reviewed the parties' briefs and heard oral argument, for the reasons set forth below defendant's motion to dismiss will be granted with plaintiff being granted leave to amend.

## II.    Background

### a. *Relevant Facts*

Upon the death of his mother, Ramona Hacker ("Ramona"), plaintiff came to be a beneficiary of a trust consisting of 3,000 acres located in Fresno County, California ("the trust").  (Doc. No. 27, Second Amended Complaint ("SAC") at ¶ 20.)  In that SAC, plaintiff alleges as follows.  According to the terms of Ramona's will probated in 1982, plaintiff, as one of Ramona's four children, is to inherit a one-fourth share of the 3,000 acres upon the death of his father, defendant James.  (*Id.*)  The will also stipulates that should any of Ramona's four children die without living issue that son's share will "be divided between the living sons [sic] or deceased sons [sic] issues."  (*Id.* at ¶ 23.)  According to plaintiff, defendants have engaged in a 22-year scheme aimed at cheating him out of his inheritance, the current manifestation of which involves leaving him for dead in Thailand with a failing liver.  (*Id.* at ¶¶ 33–76.)

---

[2]  Though HCC is named as a defendant, plaintiff does not specify any acts taken by HCC in his complaint.  Therefore, the court will refer to defendant Michael and defendant James collectively as "defendants."  The court will separately reference HCC where appropriate.

Plaintiff traces defendants' scheme back to August 8, 1982, before his mother died of cancer. On that day, defendant James blackmailed plaintiff by threatening to "make sure [p]laintiff never s[aw] any of his inheritance" if plaintiff disclosed a recently discovered affair defendant James was having with a neighbor. (*Id*. at ¶ 16.)

Defendants then attempted to deprive plaintiff of his inheritance in January 1984 when defendant James stole from him a 1/8th percent interest in HCC. (*Id*. at ¶ 25.) This theft, though slight, gave defendant James a controlling interest in HCC. (*Id*.)[3] Plaintiff claims he owned a 12.5% interest in the stock of Lackaff Cattle Corporation (which defendant James would convert into HCC) "[a]t the time of Ramona's death," *id*. at ¶ 24, which the court interprets as indicating an ownership interest prior to the probating of Ramona's will.

Plaintiff also alleges defendants deprived him of his interest in HCC through a series of extortionate acts which took place between February 3, 2002 and February 6, 2002. (*Id*. at ¶¶ 26–30.) Defendant James allegedly twice visited plaintiff, holding him at gun point each time and demanding plaintiff sign over his shares. (*Id*. at ¶¶ 26, 28.) Defendant Michael called plaintiff, telling him to comply with the demand or defendant James would kill him. (*Id*. at ¶ 27.) Lastly, defendants allegedly hired two men to fire rifle shots over plaintiff's cabin in order to scare him into complying with their demands. (*Id*. at ¶ 29.) As a result of this conduct, plaintiff visited his mother's estate attorney to see if the transfer of stock would impact his inheritance. (*Id*. at ¶ 30.) Though not explicitly alleged in the SAC, it appears plaintiff did transfer his shares.

According to plaintiff, the latest—and current—iteration of defendants' scheme is a plan to leave plaintiff for dead in Thailand. In May 2013, plaintiff learned he had unusually high liver enzymes and required immediate medical care. (*Id*. at ¶ 32.) On or about May 28, 2013, plaintiff asked defendants for money to obtain treatment; two and a half months passed without a response, and plaintiff decided to again ask defendant James in August 2013 for assistance. (*Id*. at ¶¶ 33–34.) Plaintiff alleges defendant James agreed to give plaintiff a 160-acre parcel of land known as Wildcat Mountain but also told plaintiff he would need to speak with defendant

---

[3] However, plaintiff fails to allege how this alleged theft relates to his inheritance.

3

Michael because Michael was now in control of the family property. (*Id*. at ¶ 35.) According to plaintiff, defendant Michael agreed to loan plaintiff $15,000. (*Id*. at ¶ 36.) However, upon arriving in Thailand, plaintiff learned the true cost of his treatment would be $25,000. (*Id*. at ¶ 45.) Plaintiff contacted defendant Michael and requested he be allowed to sell Wildcat Mountain to fund the procedure; however, defendant Michael refused and instead offered to loan him an additional $15,000, which would be deducted from plaintiff's inheritance. (*Id*. at ¶¶ 46–47.) Defendant Michael faxed plaintiff a promissory note. (*Id*. at ¶ 48.) Plaintiff never received the additional $15,000, and, when he later contacted defendant Michael to inquire about those funds, defendant Michael "threatened [him] with serious injury and possible death." (*Id*. at ¶¶ 49–50.) Lastly, plaintiff alleges he contacted defendant James on November 10, 2015 and came to an agreement with defendant James to sell him Wildcat Mountain for $50,000. (*Id*. at ¶¶ 73–74.) However, during the conversation, defendant James informed plaintiff he needed to speak with defendant Michael about the sale. (*Id*. at ¶ 74.) Defendant James later disconnected his phone and changed his number, and plaintiff has not been able to contact him since. (*Id*. at ¶ 75.)

Based on these far-ranging allegations, plaintiff alleges six causes of action against defendants. The first three consist of RICO claims pursuant to § 1962(b),(c), and (d). Plaintiff also alleges one claim of fraud and deceit and two claims of breach of contract.

b. *Procedural History*

The procedural history of this matter is somewhat involved. Plaintiff originally filed his complaint on May 19, 2015, alleging federal jurisdiction pursuant to 28 U.S.C. § 1331. (Doc. No. 1.) However, plaintiff's complaint did not actually present a federal question, containing only state law claims, and defendant Michael moved to dismiss for lack of federal jurisdiction. (Doc. No. 4.) Before the assigned magistrate judge could address the motion to dismiss, plaintiff filed a first amended complaint ("FAC"). (Doc. No. 7.) The motion to dismiss was subsequently denied as moot. (Doc. No. 10.) Defendant Michael filed a new motion to dismiss on August 21, 2015. (Doc. No. 14.) On December 15, 2015, a newly assigned magistrate judge issued findings and recommendations recommending that the court grant defendant Michael's motion to dismiss with leave to amend. (Doc. No. 24.) Those findings and recommendations were never adopted by the

1  court. On February 29, 2016, the case was transferred to the undersigned. (Doc. No. 25.) On
2  April 7, 2016, plaintiff filed a second amended complaint. (Doc. No. 27.) On May 2, 2016,
3  defendant Michael filed a motion to dismiss—subsequently amended the following day—in
4  which he pointed out the case's procedural irregularity but also expressed a desire to avoid
5  "unnecessary delay" and added expense. (Doc. Nos. 28, 28-1 at 2.) The court resolves this quirk
6  by adopting the December 15, 2016 findings and recommendations (Doc. No. 24), dismissing the
7  FAC with leave to amend and noting that plaintiff's SAC is the current operative complaint.

### III.    Applicable Legal Standard

    a. *Rule 12(b)(6)*[4]

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). It is inappropriate to assume that the plaintiff

---

[4] Defendant Michael also claims this court lacks subject matter jurisdiction and seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Here, plaintiff alleges defendants violated RICO, a federal statute. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Thus, jurisdiction is appropriate. Furthermore, while the court, for reasons discussed below, dismisses plaintiff's RICO claim, it does so with leave to amend, granting plaintiff the opportunity to rectify any deficiencies with respect to federal jurisdiction.

"can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is permitted to consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

b. *RICO*

The civil RICO statutes allow individuals to file suit and recover treble damages against individuals who, through a "pattern of racketeering activity," acquire an interest in, or conduct the business of, an enterprise engaged in interstate or foreign commerce. 18 U.S.C. §§ 1962(b), 1962(c), 1964(c). Section 1962(b) prohibits acquiring or maintaining an interest in an enterprise engaged in interstate or foreign commerce through a pattern of racketeering activity, whereas § 1962(c) prohibits conducting the affairs of an enterprise engaged in interstate or foreign commerce through a pattern of racketeering activities. Section 1962(d) also creates a private cause of action against individuals who conspire to engage in such prohibited activity.

Generally, to state a RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" and (5) injury "in [the plaintiff's] business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). "Though sections 1962(b) and (c) have some distinct elements, the touchstone of both is that each individual defendant must be shown to have personally participated in a pattern of racketeering activity." *Zazzali v. Ellison*, 973 F. Supp. 2d 1187, 1200 (D. Idaho 2013). A § 1962(b) claim is distinguished from a § 1962(c) in that a plaintiff must allege and show defendants used "a pattern of racketeering activity . . . to acquire control of [an] enterprise." *Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*, 832 F. Supp. 585, 590 (E.D.N.Y. 1993).

/////

"Racketeering activities" are defined by statute. 18 U.S.C. § 1961(1). The definition includes a list of specific acts indictable under title 18 of the United States Code—such as wire fraud (18 U.S.C. § 1343), and mail fraud (18 U.S.C. § 1341)—as well as specific violations of state law punishable by imprisonment for more than one year. *Id.* "Pattern of racketeering activity" is defined as "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." *Id.* at § 1961(5). The Supreme Court expanded on this definition when it held "to prove a pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, *and that they amount to or pose a threat of continued criminal activity.*" *H.J., Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239 (1989).

### IV. Analysis

The allegations of plaintiff's SAC fails to establish he has standing to pursue a RICO claim. "A plaintiff has standing to bring a RICO claim and can recover only to the extent that 'he has been injured in his business or property by the conduct constituting the violation.'" *Walters v. Fidelity Mortg. of California*, 730 F. Supp. 2d 1185, 1206 (E.D. Cal. 2010) (quoting *Sedima*, 473 U.S. at 496). A RICO plaintiff "must demonstrate that the racketeering activity proximately caused the loss." *Guerrero v. Gates*, 442 F.3d 697, 707 (9th Cir. 2006) (citing *Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1087 (9th Cir. 2002)). Lastly, the loss must be concrete, not prospective. *Izenberg v. ETS Services, LLC*, 589 F. Supp. 2d 1193, 1204 (C.D. Cal. 2008).

Here, plaintiff's RICO claims are based on defendants' alleged attempts to deprive him of his interest in the trust. As a beneficiary, plaintiff undoubtedly holds a property interest in the trust. *See Steinhart v. Cty. of Los Angeles*, 47 Cal. 4th 1298, 1319 (2010) ("Under general principles of trust law, trust beneficiaries hold the equitable estate or beneficial interest in property held in trust and are regarded as the real owner[s] of [that] property." (citation and quotation marks omitted)). However, plaintiff has failed to allege facts which, if proven, would establish he has suffered an injury to his property because he has not alleged that he has been deprived of any interest in the trust. Rather, plaintiff appears only to allege he was harmed by

7

defendant Michael's refusal to allow him to sell Wildcat Mountain. (Compl. at ¶¶ 39, 47.) But there is nothing in the SAC suggesting the trust granted plaintiff the authority to do so. Thus, plaintiff pleads only a prospective injury: that he may die in Thailand and, somehow, may lose his interest in the trust. *See Izenberg*, 589 F. Supp. 2d at 1204–05 (holding plaintiff could not rely on prospective injuries to establish RICO standing).

Plaintiff also alleges in the SAC "[d]efendant Michael [stole] or otherwise misappropriated assets that belong to the trust estate . . . ." (SAC at ¶ 60.) However, the complaint fails to allege facts explaining how the alleged RICO predicate acts—wire fraud, consisting of the faxed promissory note, and extortion—were the proximate cause of the misappropriation. Plaintiff merely alleges defendants lured him to Thailand in the hopes he would die there and subsequently be dispossessed of his interest in the trust. Even if the court were to construe this as a concrete injury, plaintiff still fails to allege any facts showing that the alleged acts of wire fraud or extortion caused his claimed loss. Indeed, the alleged wire fraud did not take place until plaintiff was already allegedly stranded in Thailand. (SAC at ¶ 48.) Based upon the allegations of plaintiff's SAC, the alleged extortion appears to be entirely disconnected from his trip to Thailand, having taken place more than a decade earlier.

Finally, there are simply no facts alleged in the SAC connecting the predicate acts to the alleged misappropriation of assets by defendant Michael. *See Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) (noting a RICO claim requires "some direct relation between the injury asserted and the injurious conduct alleged." (quoting *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992))). Thus, plaintiff's RICO claims must be dismissed due to a lack of standing.

**V.     Conclusion**

For all of the reasons set forth above:

1. The court adopts the magistrate judge's findings and recommendations (Doc. No. 24);
2. Defendant Michael's motion to dismiss (Doc. No. 30) is granted;
3. In large part influenced by his *pro se* status and the fact that he has not previously received a court order pointing out the deficiencies in his complaint, the court also

8

grants plaintiff leave to amend, *see Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002) ("We are very cautious in approving a district court's decision to deny pro se litigants leave to amend."); and

4. If he wishes to continue to pursue this action, plaintiff must file any amended complaint within 21 days of the date of this order.

IT IS SO ORDERED.

Dated:   **August 11, 2016**                               _____
                                                                              UNITED STATES DISTRICT JUDGE