UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASEY L. HACKER,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL L. HACKER, JAMES O. HACKER, and HACKER CATTLE CORPORATION,<br><br>    Defendants. | No. 1:15-cv-01258-DAD-MJS<br><br><u>ORDER GRANTING DEFENDANT MICHAEL HACKER'S MOTION TO DISMISS</u><br><br>(Doc. No. 41) |

This matter came before the court on defendant Michael Hacker's motion to dismiss plaintiff's third amended complaint. A hearing on the motion was held on October 18, 2016. Plaintiff appeared telephonically on his own behalf, and attorney James Betts appeared on behalf of the moving defendant. Having considered the parties' briefs and oral arguments and for the reasons set forth below, the court will grant defendant's motion to dismiss.

**BACKGROUND**

**A.    Procedural Background**

Plaintiff Casey Hacker filed his original complaint on May 19, 2015, alleging federal jurisdiction pursuant to 28 U.S.C. § 1331. (Doc. No. 1.) On June 11, 2015, defendant Michael Hacker ("Michael") moved to dismiss plaintiff's complaint for lack of federal subject matter jurisdiction. (Doc. No. 4.) Before the court could address defendant's motion to dismiss,

1

however, plaintiff filed a first amended complaint on July 20, 2015.  (Doc. No. 7.)  Accordingly, the motion to dismiss was denied as moot (Doc. No. 10).  On August 21, 2015, defendant Michael moved to dismiss plaintiff's first amended complaint.  (Doc. No. 14.)  On December 15, 2015, the assigned magistrate judge issued findings and recommendations recommending that the court grant defendant Michael's motion with leave to amend.  (Doc. No. 24.)  On February 29, 2016, the case was reassigned to the undersigned.[1]  (Doc. No. 25.)  On April 7, 2016, before the court issued an order on the then pending findings and recommendations, plaintiff filed a second amended complaint, adding as defendants James Hacker ("James") and a cattle-feed business owned and operated by Michael and James, Hacker Cattle Corporation ("HCC").  (Doc. No. 27.)  On May 2, 2016, defendant Michael filed another motion to dismiss, this time seeking dismissal of plaintiff's second amended complaint.  (Doc. No. 28.)  On August 12, 2016, the court both adopted the assigned magistrate judge's findings and recommendations recommending dismissal of plaintiff's first amended complaint, and granted defendant Michael's motion to dismiss plaintiff's second amended complaint.  (Doc. No. 39.)  In large part due to plaintiff's status as a *pro se* litigant, the court granted plaintiff leave to file yet another amended complaint.  (*Id.* at 8–9.)

On August 30, 2016, plaintiff filed his third amended complaint against defendants Michael, James, and HCC.  (Doc. No. 40.)  With the exception of about ten paragraphs, plaintiff's third amended complaint is substantially identical to his second amended complaint.  As was the case previously, plaintiff alleges six claims against the defendants.  Plaintiff's first three claims allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), specifically 18 U.S.C. § 1962(b),(c), and (d).  Plaintiff also alleges one claim of fraud and deceit and two claims of breach of contract.

On September 9, 2016, defendant Michael filed the instant motion to dismiss the third amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. No. 41.)  On September 29, 2016 plaintiff filed his opposition.  (Doc. No. 42.)

---

[1] Thereafter, all dispositive motions have been set for hearing before the assigned district judge at the direction of the court and in keeping with the court's Local Rules.  (See Doc. No. 31.)

On October 11, 2016, defendant filed a reply.  (Doc. No. 43.)

**B.     Facts Alleged in Plaintiff's Third Amended Complaint**

According to the third amended complaint, upon the death of his mother, Ramona Hacker ("Ramona"), plaintiff came to be a beneficiary of certain trusts with an interest in 3,000 acres located in Fresno County, California.  (Doc. No. 40, Third Amended Complaint ("TAC") ¶¶ 19–20.)  The 3,000 acres of property includes a 160-acre parcel known as Wildcat Mountain.  (*Id.* ¶ 21.)  According to the terms of Ramona's will probated in 1982, plaintiff, as one of Ramona's four children, is to inherit a one-fourth share of the 3,000 acres upon the death of his father, defendant James.  (*Id.* ¶ 20.)  The will also stipulates that should any of Ramona's four children die without living issue that son's share will "be divided between the living sons [sic] or deceased sons [sic] issues."  (*Id.* ¶ 23.)  According to plaintiff, defendants have engaged in a 22-year scheme aimed at cheating him out of his inheritance, the current manifestation of which involves leaving him for dead in Thailand with a failing liver.  (*Id.* ¶¶ 33–76.)

Plaintiff traces defendants' alleged scheme back to August 8, 1982, before his mother died of cancer.  On that day, defendant James blackmailed plaintiff by threatening to "make sure [p]laintiff never s[aw] any of his inheritance" if plaintiff disclosed a recently discovered affair defendant James was having with a neighbor.  (*Id.* ¶ 16.)  Defendants then attempted to deprive plaintiff of his inheritance in January 1984 when defendant James stole from him a 1/8th percent interest in HCC.  (*Id.* ¶ 25.)  This alleged theft gave defendant James a controlling interest in HCC.  (*Id.*)  Plaintiff claims that "[a]t the time of Ramona's death," he owned a 12.5% interest in the stock of Lackaff Cattle Corporation (which defendant James would convert into HCC).  (*Id.* ¶ 24.)  The court interprets this allegation as indicating plaintiff's ownership interest in these corporations prior to the probating of Ramona's will.

Plaintiff also alleges defendants deprived him of his interest in HCC through a series of extortionate acts which took place between February 3, 2002 and February 6, 2002.  (*Id.* ¶¶ 26–30.)  Defendant James allegedly twice visited plaintiff, holding him at gun point each time and demanding plaintiff sign over his stock in HCC.  (*Id.* ¶¶ 26, 28.)  Defendant Michael called plaintiff, telling him to comply with the demand or defendant James would kill him.  (*Id.* ¶ 27.)

3

Lastly, defendants allegedly hired two men to fire rifle shots over plaintiff's cabin in order to scare him into complying with their demands.  (*Id*. ¶ 29.)  As a result of this conduct, plaintiff visited his mother's estate attorney to see if the transfer of stock would impact his inheritance.  (*Id*. ¶ 30.)  Though not explicitly alleged in his third amended complaint, plaintiff appears to have transferred his stock in HCC.

According to plaintiff, the latest—and current—iteration of defendants' scheme is a plan to leave plaintiff for dead in Thailand.  In May 2013, plaintiff learned he had unusually high liver enzymes and required immediate medical care.  (*Id*. ¶ 32.)  On or about May 28, 2013, plaintiff asked defendants for money to obtain treatment; two and a half months passed without a response, and plaintiff decided to again ask defendant James in August 2013 for assistance.  (*Id*. ¶¶ 33–34.)  Plaintiff alleges defendant James agreed to give plaintiff the 160-acre parcel of land known as Wildcat Mountain but also told plaintiff he would need to speak with defendant Michael because Michael was now in control of the family property.  (*Id*. ¶ 35.)  According to plaintiff, defendant Michael agreed to loan plaintiff $15,000.  (*Id*. ¶ 36.)  However, upon arriving in Thailand, plaintiff learned the true cost of his treatment would be $25,000.  (*Id*. ¶ 45.)  On March 13, 2014, plaintiff contacted defendant Michael and requested he be allowed to sell Wildcat Mountain to fund the procedure; however, defendant Michael refused and instead offered to loan him an additional $15,000, which would be deducted from plaintiff's inheritance.  (*Id*. ¶¶ 46–47.)  Defendant Michael faxed plaintiff a promissory note.  (*Id*. ¶ 48.)  Plaintiff never received the additional $15,000, and, when he later contacted defendant Michael to inquire about those funds, defendant Michael "threatened [him] with serious injury and possible death." (*Id*. ¶¶ 49–50.)

Lastly, plaintiff newly alleges in his third amended complaint that in early April 2015, Michael informed plaintiff that Michael sold the Wildcat Mountain property.  (*Id.* ¶ 67.)  Plaintiff demanded documentation regarding the sale, as well as proceeds from the sale, but defendant Michael refused to do so.  (*Id.* ¶¶ 68–69.)  Later that year, on November 10, 2015, plaintiff contacted defendant James and came to an agreement whereby James would pay plaintiff $50,000 to resolve the dispute concerning the Wildcat Mountain property.  (*Id*. ¶¶ 73–74.)  However,

during that same conversation, defendant James informed plaintiff he would need to discuss the matter with defendant Michael before proceeding. (*Id*. ¶ 74.) Defendant James later disconnected his phone and changed his number, and plaintiff has not been able to contact him since. (*Id*. at ¶ 75.)

## APPLICABLE LEGAL STANDARDS

### A.     Motion to Dismiss Under Rule 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). It is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is permitted to consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

/////

**B.     Civil Claims Under RICO**

The civil RICO statutes allow an individual to file suit and recover treble damages against other individuals who, through a "pattern of racketeering activity," acquire an interest in, or conduct the business of, an enterprise engaged in interstate or foreign commerce. 18 U.S.C. §§ 1962(b), 1962(c), 1964(c). Section 1962(b) prohibits acquiring or maintaining an interest in an enterprise engaged in interstate or foreign commerce through a pattern of racketeering activity, whereas § 1962(c) prohibits conducting the affairs of an enterprise engaged in interstate or foreign commerce through a pattern of racketeering activities. Section 1962(d) also creates a private cause of action against individuals who conspire to engage in such prohibited activity.

Generally, to state a RICO claim, a plaintiff must allege: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity (known as "predicate acts,") and (5) causing injury to plaintiff's business or property. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985); *Sanford v. Memberworks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010); *Walter v. Drayson*, 538 F.3d 1244, 1247 (9th Cir. 2008); *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996). The alleged enterprise must exist "separate and apart from that inherent in the perpetration of the alleged [activity]." *Chang v. Chen*, 80 F.3d 1293, 1300–01 (9th Cir.1996). "Though sections 1962(b) and (c) have some distinct elements, the touchstone of both is that each individual defendant must be shown to have personally participated in a pattern of racketeering activity." *Zazzali v. Ellison*, 973 F. Supp. 2d 1187, 1200 (D. Idaho 2013).

"Racketeering activities" are defined by statute. 18 U.S.C. § 1961(1). The definition includes a list of specific acts indictable under title 18 of the United States Code—such as wire fraud (18 U.S.C. § 1343), and mail fraud (18 U.S.C. § 1341)—as well as specific violations of state law punishable by imprisonment for more than one year. *Id.* "Pattern of racketeering activity" is defined as "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." *Id.* at § 1961(5). The Supreme Court expanded on this definition when it held "to prove a pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, *and*

6

that they amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239 (1989).

Moreover, a plaintiff alleging a RICO claim "can recover only to the extent that 'he has been injured in his business or property by the conduct constituting the violation.'" *Walters v. Fidelity Mortg. of California*, 730 F. Supp. 2d 1185, 1206 (E.D. Cal. 2010) (quoting *Sedima*, 473 U.S. at 496). A RICO plaintiff "must demonstrate that the racketeering activity proximately caused the loss." *Guerrero v. Gates*, 442 F.3d 697, 707 (9th Cir. 2006) (citing *Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1087 (9th Cir. 2002)). Lastly, the loss must be concrete, not prospective. *Izenberg v. ETS Services, LLC*, 589 F. Supp. 2d 1193, 1204 (C.D. Cal. 2008).

## DISCUSSION

Plaintiff's third amended complaint fails to allege additional facts sufficient to support claims pursuant to RICO. As was the case in his second amended complaint, plaintiff continues to base his RICO claims on defendants' alleged attempts to deprive him of his interest in property belonging to the trusts—specifically his indirect interest in the Wildcat Mountain property. (*See* TAC ¶ 70; Doc. No. 42 at 2–3.) Plaintiff primarily alleges he was harmed by defendant Michael's refusal to give to plaintiff, allow plaintiff to sell, or give plaintiff the proceeds from the sale of the Wildcat Mountain property in order to pay for plaintiff's medical needs. (*Id.* ¶¶ 39, 47–49, 67–69, 86.) However, these facts fail to support an inference that plaintiff's interest in the trusts—specifically in the Wildcat Mountain property—was harmed.[2] Plaintiff does not allege in his third amended complaint that the trust authorized the transfer of the Wildcat Mountain property or the proceeds from its sales directly to plaintiff. Thus, even if the facts described in the third amended complaint are proven as true, plaintiff has not lost his interest in the trust or any proceeds from the sale of the Wildcat Mountain property, prior to defendant James' death. (*See id.* ¶ 20 (alleging that upon defendant James' death, the trusts' interest would be distributed in

---

[2] Generally speaking, a trust "is merely a *relationship* by which one person or entity holds property for the benefit of some other person or entity: 'A trust is any arrangement which exists whereby property is transferred with an intention that it be held and administered by the transferee (trustee) for the benefit of another. . . .'" *Presta v. Tepper*, 179 Cal. App. 4th 909, 913–14 (2009) (citations omitted). A trust is unlike a corporation, which is capable of entering into a business relationship with another party. *Id.* at 913.

1  equal shares to each of Ramona's sons).)  Plaintiff additionally alleges that defendant Michael
2  threatened plaintiff to sign over his stock in HCC (*see id.* ¶¶ 27, 86), but fails to allege facts
3  regarding how such an act harmed plaintiff's interest in either the Wildcat Mountain property or
4  the trusts.  To the extent the allegations of the third amended complaint suggest that defendant
5  Michael's conduct will result in disproportionate distribution of the trusts' interest, plaintiff
6  pleads only a prospective injury.  *See Izenberg*, 589 F. Supp. 2d at 1204–05 (holding plaintiff
7  could not rely on prospective injuries to establish RICO standing).

8  Plaintiff continues to allege in his third amended complaint that "Defendant MICHAEL
9  has stolen or otherwise misappropriated assets that belong to Plaintiff." (*Id.* ¶ 60.)  However, the
10  complaint still fails to allege facts explaining (1) how such assets belong to plaintiff, rather than
11  the trusts; or (2) how the alleged RICO predicate acts—wire fraud, consisting of the faxed
12  promissory note, and extortion—were the proximate cause of the misappropriation.  Plaintiff
13  repeats his allegations that defendants induced him to go to Thailand in the hopes he would die
14  there and subsequently be dispossessed of his interest in the trust.  As the court has noted before,
15  even if such an allegation amounts to a cognizable injury, plaintiff still fails to allege any facts to
16  support an inference that the alleged wire fraud or extortion—rather than events occurring before
17  plaintiff traveled to Thailand—caused his purported loss.  (*See id.* ¶¶ 46–48.)  There are simply
18  no facts alleged in the third amended complaint connecting the predicate acts to the alleged
19  misappropriation of assets by defendant Michael.  *See Hemi Grp., LLC v. City of New York, N.Y.*,
20  559 U.S. 1, 9 (2010) (A RICO claim requires "some direct relation between the injury asserted
21  and the injurious conduct alleged.") (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258,
22  268 (1992)).  Thus, plaintiff's civil RICO claims must be dismissed for failure to state a claim.

23  For the reasons set forth above, the court has determined that defendant Michael Hacker's
24  motions to dismiss should be granted.  Civil RICO claims against defendants James Hacker and
25  HCC remain.  "A District Court may properly on its own motion dismiss an action as to
26  defendants who have not moved to dismiss where such defendants are in a position similar to that
27  of moving defendants or where claims against such defendants are integrally related." *Silverton*
28  *v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981).  "Such a dismissal may be made

without notice where the [plaintiff] cannot possibly win relief." *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987). The court's authority in this regard includes *sua sponte* dismissal as to defendants who have not been served and defendants who have not yet answered or appeared. *Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 802 (9th Cir. 1995) ("We have upheld dismissal with prejudice in favor of a party which had not yet appeared, on the basis of facts presented by other defendants which had appeared."). Here, while defendants James and HCC have not yet been served, they clearly sit in in a position similar to that of defendant Michael, and the claims against all defendants are integrally related. As is the case with defendant Michael, plaintiff has failed to allege how his interest in the Wildcat Mountain property or in the trusts has been harmed, or how any of the alleged predicate acts of these other defendants injured plaintiff. Under these circumstances, dismissal of all plaintiff's civil RICO claims against the defendants is appropriate.

Finally, in addition to the federal claims addressed above, plaintiff's third amended complaint asserts a number of state law causes of action. A district court may decline to exercise supplemental jurisdiction over state law claims if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). The court's discretion to decline jurisdiction over state law claims is informed by the values of judicial economy, fairness, convenience, and comity. *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc). In addition, "[t]he Supreme Court has stated, and [the Ninth Circuit] ha[s] often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Acri,* 114 F.3d at 1001 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also Satey v. JP Morgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) (recognizing this principle but noting that dismissal of the remaining state law claims is not mandatory). Of course, "primary responsibility for developing and applying state law rests with the state courts." *Curiel v. Barclays Capital Real Estate Inc.*, Civ. No. S–09–3074 FCD KJM, 2010 WL 729499, at *1 (E.D. Cal. Mar. 2, 2010). Here, consideration of judicial economy,

/////

fairness, convenience, and comity all point toward declining to exercise supplemental jurisdiction.

## CONCLUSION

Accordingly,

1. Defendant Michael's motion to dismiss plaintiff's third amended complaint (Doc. No. 41) is granted;
2. Plaintiff's civil RICO claims brought pursuant to 18 U.S.C. § 1961 et seq. as to all defendants are dismissed with prejudice;
3. The court declines to exercise supplemental jurisdiction over plaintiff's state law claims and plaintiff's state law claims be dismissed without prejudice under 28 U.S.C. § 1367(c)(3); and
4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **November 11, 2016**

_____
UNITED STATES DISTRICT JUDGE